## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**TEAMCARE INFUSION ORLANDO, INC.,**

       **Plaintiff,**

  **-vs-**                            **Case No.  6:10-cv-1752-Orl-22GJK**

**UNITED STATES DEPARTMENT OF**
**HEALTH AND HUMAN SERVICES, et. al.,**

       **Defendants.**
_____

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT

      Teamcare Infusion Orlando, Inc. (the "Plaintiff") appeals to the district court from a final decision of the Secretary of the Department of Health and Human Services (the "Secretary") finding that Plaintiff received $1,614,691.00 in overpayments from Medicare for claims submitted by Plaintiff for durable medical equipment and supplies ("DME").   Doc. Nos. 1, 37. Plaintiff maintains that the final decision of the Secretary should be reversed and remand because: 1) the Secretary's action is arbitrary and capricious in that the Secretary disparately treated the claims at issue in this case from other claims submitted by Plaintiff (Doc. No. 37 at 9-16); 2) the Secretary should be estopped from enforcing the overpayments in this case or Plaintiff should be deemed without fault for the overpayments because it reasonably relied upon the Secretary's approval of the prior allegedly disparately treated claims when deciding what support to submit for the claims at issue in this case (Doc. No. 37 at 16-19); 3) there is no

substantial evidence supporting the findings of the ALJ and MAC that Plaintiff failed to provide sufficient information to determine whether the DME at issue was medically necessary at the time the services were provided (Doc. No. 37 at 19-32); 4) the ALJ failed to provide "any reasons" for finding the testimony of Mark Schneider, Plaintiff's president and owner, not credible (Doc. No. 37 at 9-11, 19-20); and 5) the record lacks substantial evidence supporting the total amount awarded by the Administrative Law Judge (the "ALJ") and the Medicare Appeals Council (the "MAC") (Doc. No. 37 at 32-33).

For the reasons set forth below, Plaintiff's final argument is the only meritorious argument.  Although the Court has tailored the factual background to the last issue raised by Plaintiff, the Court addresses each issue below.  Pursuant to 42 U.S.C. § 405(g), the undersigned **RECOMMENDS** that the final decision of the Secretary be **REVERSED and REMANDED** because it is not supported by substantial evidence as to the amount of the overpayments.

## I.   <u>BACKGROUND</u>.

Plaintiff is a pharmacy which provides medications and DME to customers, some of whom are insured by Medicare.  Doc. No. 37 at 5.  For those customers who are insured by Medicare, Plaintiff receives an assignment of benefits and then Plaintiff submits claims for payment directly to Medicare.  R. 1901.  In the past, through its carriers and independent contractors, Medicare has denied certain claims submitted by Plaintiff and, for at least some of those claims, Plaintiff has succeeded in having those denials overturned through Medicare's administrative review process.  R. 2674-3001.[1]

---

[1] Plaintiff submitted 36-38 prior favorable administrative decisions for claims not at issue in this case to the ALJ at the hearing. R. 2674-3000, 4355, 4380-82.  At the hearing before the ALJ, Plaintiff acknowledged that Plaintiff has also received prior unfavorable determinations, but Plaintiff did not include those in the evidence submitted at the hearing.  R. 4382-83.  Although the record contains the prior administrative decisions, which themselves contain a

**A.  Initial Determination.**

At some point in time prior to April 11, 2008, TrustSolutions, LLC, the Medicare Program Safeguard Contractor (the "PSC"), conducted an audit of claims submitted by Plaintiff from January 1, 2004 through September 30, 2007.  R. 1901, 2004-05; Doc. No. 37 at 8 n. 2.[2] The PSC conducted an audit of "122 beneficiaries/claims" submitted by Plaintiff.  R. 2005.[3]  The PSC selected the "122 beneficiaries/claims" based on a random sample.  R. 3, 1901, 1971, 2004-05, 4450.  On April 11, 2008, after conducting the audit and extrapolating the data from the random sample, the PSC issued an initial determination that Plaintiff is responsible for $1,614,619.00 in overpayments for claims submitted to Medicare for DME from January 1, 2004 through September 30, 2007.  R. 1901, 2004, 2006.  The record on appeal does not contain the audit performed by the PSC, any information regarding the "random sample," the total number of claims submitted by Plaintiff to Medicare from January 1, 2004 through September 30, 2007, the formula used by the PSC to perform the extrapolation, or the initial determination issued by the PSC.  R. 1-4457.

**B.  Redetermination.**

On May 16, 2008, Plaintiff requested a redetermination of the PSC's initial determination from the carrier, Cigna Government Services ("Cigna").  R. 2004.  On August 20, 2008, Cigna issued a decision upholding the PSC's initial determination, finding that Plaintiff is responsible

---

description of the support provided by Plaintiff, the record does not contain any of the information Plaintiff actually submitted to support those claims.  R.  2674-3000, 4355, 4380-82.

[2] In the ALJ's September 8, 2009 decision, he incorrectly identifies Cigna Government Services as the PSC. *Compare* R. 1901 *with* R. 2004-2005.

[3] The record citation is to the redetermination decision by Cigna Government Services, which refers to the audit performed by the PSC.  R. 2004-2005.  The record on appeal contains no documents, reports, or other information directly from the PSC.  R. 1-4457.

for $1,614,691.00 in overpayments.  R. 2004-06.  Cigna provides three separate rationales (Rationales A-C), which were used individually to uphold the denial of the "122 beneficiaries/claims."  R. 2005-2007. Rationale A, as applied by Cigna, is that "no medical documentation was received" from Plaintiff to support the claims. R. 2006.  Rationale B is that the beneficiary at issue for the claim was an inpatient on the date of service and, therefore, would be covered by a different insurance plan from Medicare.  R. 2006-07.  Rationale C is that the medical documentation provided was not sufficient to establish that the claim was reasonable and medically necessary.  R. 2007.

In its redetermination decision, Cigna provides a spreadsheet detailing each of the "122 beneficiaries/claims" and the specific rational used to deny the claim.  R. 2005, 2011-2027.  The spreadsheet includes: the beneficiary name, 14-digit claim number, social security number, dates of service, specific DME codes used for the dates of service, and the rationale letter (A-C), outlining the Rationales which were used to deny the claims.  R. 2011-2027.  In the record on appeal, the beneficiaries' names and social security numbers are redacted.  R. 2011-2027. Cigna's spreadsheet contains 109 beneficiaries and 132 denied claims, not "122 beneficiaries/claims."  *Compare* R. 2005 *with* 2011-2027.  According to the pagination on Cigna's spreadsheet, page 6 of 19 is missing.  *See* R. 2014-2015.  Thus, it appears that there are more beneficiaries and claims which were reviewed by Cigna than are contained in the record on appeal.

Cigna relied upon Rationale A to deny 69 claims, Rationale B to deny 1 claim, and Rationale C to deny 38 claims. R. 2011-2027.  Despite stating in its decision that no claims at issue were covered by Medicare Part B, Cigna did not list any rationale for denying 24 of the

4

claims.  R. 2011-2027.   Moreover, despite the apparent discrepancy between the number of beneficiaries and claims reviewed by the PSC in its random sample and the number reviewed by Cigna, both reviews arrived at a total overpayment of  $1,614,691.00.  R. 2004-2006, 2011-2027.

### C.  Reconsideration.

On February 14, 2009, Plaintiff requested reconsideration from RiverTrust Solutions, a Medicare Qualified Independent Contractor (the "QIC").  R. 1901, 1971.  The QIC conducted "a new and independent review."  R. 1971.  Thus, the QIC's review was *de novo*.   According to the QIC, the case file included medical records, delivery slips, financial claims histories, Cigna's redetermination letter, prescriptions, delivery notifications, patient progress notes, Certificates of Medical Necessity ("CMN"), and one letter from a physician regarding a specific beneficiary.  R. 1972.

On April 10, 2009, the QIC determined that all of the claims at issue are not covered by Medicare under four separate rationales (Rationales A-D), which were applied individually to the claims.   R. 1972-1973, 1976-4. Rationale A, as applied by the QIC, is "no medical documentation was received" from Plaintiff to support the claims.  R. 1972-73.  Rationale B is that the beneficiary at issue for the claim was an inpatient on the date of service and, therefore, would be covered by a different insurance plan from Medicare.  R. 1973.  Rationale C is that the medical documentation provided was not sufficient to establish that the claim was reasonable and medically necessary. R. 1973.  Rationale D is that the beneficiary was enrolled in a Health Maintenance Organization ("HMO") at the time of the service and, therefore, the claim is not covered by Medicare.

In the reconsideration decision, the QIC attached a spreadsheet detailing the beneficiaries

and claims at issue, as well as the rationale for denying the claims.  R. 1976-1979.  The spreadsheet includes: the administrative appeal number, social security number, rationale, 13-digit claim number, and dates of service.  R. 1976-1979.  The social security numbers are redacted in the record on appeal.  R. 1976-1979.  QIC's spreadsheet does not contain the beneficiaries' names and the order of the claims is materially different in Cigna's spreadsheet.  *Compare* R. 1976-1979 *with* R. 2011-2027.

The QIC's spreadsheet contains 110 beneficiaries and 132 claims.  R. 1976-1979.[4]  The QIC relied upon Rationale A to deny 100 claims, Rationale B to deny 5 claims, Rationale C to deny 4 claims, and Rationale D to deny 1 claim.  R. 1976-1979.  QIC did not list a specific rationale to deny 22 claims.  R. 1976-1979.

**D.  ALJ Hearing.**

Plaintiff requested review of the QIC's decision before an ALJ and, on August 18, 2009, a hearing was held before ALJ Thomas P. McCarthy.  R. 1959-70, 4318-4457.  In its request for a hearing, Plaintiff stated that it "disagrees with all of the decisions by all previous reviews <u>and</u> <u>audits</u>. . . ."  R. 1959 (emphasis added).  Plaintiff appeared pro se at the hearing through its president and owner, Mark Schneider.  R. 4320.  QIC also appeared at the hearing as a "non-party participant."  R. 4320, 4334.  QIC was represented at the hearing by Gabrielle Charles, Esq., Barbara O'Neal, M.D., and Eden Jabaley.  R. 4320.

In addition to numerous other exhibits, Plaintiff offered into evidence 36 to 38 prior favorable administrative decisions, which are allegedly for beneficiaries at issue in this case, but

---

[4] As set forth above, the PSC reviewed 122 beneficiaries/claims.  R. 2005.  According to Cigna's spreadsheet, it reviewed 109 beneficiaries and 132 claims.  R. 2011-2027.

not for the claims at issue in this case. R. 58-60, 2674-3000, 4355, 4380-82.[5]  Plaintiff stated that

these prior favorable decisions are for dates of service before January 1, 2004, but they

demonstrate that Medicare has previously approved the same type of claims with the same type

of documentation for some of the same beneficiaries.  R. 4380-85.  QIC maintained that the prior

favorable decisions are irrelevant because they do not relate to the dates of service at issue in this

case.  R. 4384.

     Plaintiff also submitted additional documentation for some beneficiaries and claims at

issue in this case, including prescriptions, progress notes, patient delivery notification forms, and

CMNs.  R. 2317-2353.  The progress notes generally show the name of the physician, dates of

service, diagnosis, prognosis and authorized treatment.  R. 2319, 2324, 2326-27, 2331-32, 2335,

2341, 2345, 2350.   All indentifying information for beneficiaries included in the medical

evidence submitted by Plaintiff at the hearing has been redacted from the record on appeal.  R.

2317-2353.  Plaintiff also submitted two CMNs, which are largely eligible. R. 2348-2349.

     At the hearing, the ALJ stated that he would be conducting a *de novo* review of record,

which includes "the initial determination, redetermination, and reconsideration levels or

decisions." R. 4339.  The ALJ also noted that the record contains each individual beneficiary

claim file and corresponding medical records in support of the specific claim. R. 4340.  *See also*

R. 3029-4317.[6]   The ALJ repeatedly stated during the hearing that this case involves 110

beneficiaries.  R. 4323, 4340-4341, 4366.

---

[5] The Court is unable to verify whether the prior cases actually relate to beneficiaries at issue in this case because beneficiary names have been redacted from the record on appeal.

[6] The individual claim files and medical records contain no identifying information which would readily allow the Court to identify many of the records with corresponding claims and/or beneficiaries.  *See* R. 3029-4317.  For example, the index to the record on appeal redacts the beneficiary names or claims numbers from their corresponding pages.  *See* R. iii-vii.

During the hearing the following exchange occurred between the ALJ and Ms. Charles, the QIC's legal representative, regarding the random sample conducted in this case:

Q:      Let me just get this right.  There was a - - this is a random
        sample overpayment case?

A:      Oh, you're asking us?  Yes sir.

Q:      And was there - - how many claims in this - - was there any
        extrapolation at all?  This is not a statistical sampling case?

A:      Not that we're aware of.

R. 4450.  Thus, QIC's representative testified that no extrapolation was performed from the random sample and that this is not a statistical sampling case.  R. 4450.[7]

At the hearing, Mr. Schneider testified that as a matter of course, Plaintiff always contacts  beneficiaries before shipping DME and inquires about their status, whether they are currently receiving in-patient treatment or have changed their insurance coverage by joining an HMO.  R. 4410-16, 4434.  Plaintiff testified that most of the beneficiaries reside in Puerto Rico and it takes 10 to 14 days for the DME to reach them and, therefore, there is no way for Plaintiff to know whether the beneficiary is in an in-patient facility on the date the DME arrives.  R. 4410-16.

**E.  ALJ Decision.**

On September 9, 2009, the ALJ issued a decision finding that the DME "furnished to the beneficiaries on the dates of service at issue were not medically reasonable or necessary."  R. 1920.  Accordingly, the ALJ found that Plaintiff is "liable for the overpayment" in the amount of

---

[7] Ms. Jabaley also stated that the QIC did not deny any of the claims at issue based on the rationale that Plaintiff had not submitted any medical documentation, but denied claims because the medical documentation was not sufficient. R. 4369.  The ALJ noted that Rationale A of QIC's denial was that no medical documentation had been submitted. R. 4369.

$1,614,691.00.   R. 1901, 1938.   The ALJ compiled his own spreadsheet, grouping the beneficiaries by the type of DME Plaintiff provided them: 1) blood glucose monitor and supplies; 2) continuous airway pressure devices ("CPAP"); 3) nebulizers, drugs, and accessories; 4) ostomy supplies; 5) oxygen equipment and supplies; and 6) parenteral nutrition.   R. 1939-51. Besides grouping the beneficiaries by type of DME provided, the ALJ's spreadsheet includes the beneficiary name, last four digits of the beneficiary's social security number, dates of service, equipment service codes, and the ALJ's decision for each claim.   R. 1939-51.   The ALJ's spreadsheet does not contain a claim number for any of the beneficiaries and the beneficiaries' names are redacted in the record on appeal.   R. 1939-51.   The ALJ's spreadsheet contains 108 beneficiaries and 130 claims.   R. 1939-51.

In his decision, the ALJ determined that the claims at issue in each beneficiary group were not medically reasonable or necessary because the documentation submitted by Plaintiff did not comply with the requirements of National and Local Coverage Determinations and the Medicare Program Integrity Manual.   R. 1921-1936.   As to Mr. Schneider's testimony that the beneficiaries never informed him that they were in-patients and that Plaintiff contacts each beneficiary on a monthly basis regarding their status, the ALJ found the testimony not credible because Plaintiff failed to provide evidence demonstrating the admission or discharge date of the beneficiaries or other evidence supporting Mr. Schneider's contention that Plaintiff inquired as to each beneficiary's status.   R. 1923, 1929-30.   The ALJ also found that Mr. Schneider failed to establish that he has first-hand knowledge of Plaintiff's status inquiries.   R. 1923, 1929-30.   As for the beneficiary enrolled in an HMO at the time of service, the ALJ found Mr. Schneider's testimony that Plaintiff inquires of each beneficiaries status prior to providing the DME was not

credible because Plaintiff failed to provide evidence supporting such inquiries and because Mr.

Schneider did not establish his first-hand knowledge of Plaintiff's status inquiries.  R. 1934.

The ALJ found that the beneficiaries did not know and could reasonably be expected to

know that the DME they were provided were not covered under Medicare.  R. 1936-37.  The

ALJ determined that the Plaintiff, as a provider, "is considered to have acquired knowledge that

such services were excluded from Medicare coverage by its receipt of manuals, bulletins and

written guidelines from the carrier."  R. 1937.  The ALJ further found that Plaintiff is not without

fault for the overpayments, pursuant to 20 CFR § 404.507, because it failed to "furnish

information which it knew or should have know to be material."  R. 1937.  Thus, the ALJ found

that Plaintiff is liable for the overpayments.  R. 1938.

### F.  MAC Decision.

Plaintiff requested review of the ALJ's entire decision before the MAC.  R. 3, 107-108.

In its request for review, the Plaintiff stated, referring to the number of beneficiaries and claims,

that it was difficult to respond to the ALJ's decision because it did not "match" the prior

decisions.  R. 6, 107-108.[8]   In its decision, the MAC stated that the QIC representatives

stipulated to the accuracy of the beneficiary list at the hearing before the ALJ and, therefore, the

MAC would use the beneficiary list created by the ALJ. R. 6.  As set forth above, the ALJ's

spreadsheet contained 108 beneficiaries and 130 claims.  R. 1939-51.  However, the MAC's

beneficiary list contains 110 beneficiaries and 132 claims.  R. 39-57.  The MAC's beneficiary list

does not contain any identifying information other than a beneficiary number 1-110, and dates of

service.  R. 39-57. The MAC's beneficiary list does not correspond sequentially with the ALJ's

---

[8] In his request for review, Plaintiff provided a chart showing how the number of beneficiaries and claims has
changed throughout the administrative process.  R. 107-108.

spreadsheet.  *Compare* R. 39-57 *with* R 1939-51.[9]

On September 28, 2010, the MAC issued its decision reversing the ALJ's decision with respect to Beneficiary Numbers 73, 74, 87, 33, and 110, and modifying the ALJ's rationale for denying coverage for the remainder of the claims.  R. 3. The MAC organized its decision into the same beneficiary groups as the ALJ, but for those claims denied it provided additional or separate rationales for denying Medicare coverage.  R. 5, 8-38.  The MAC noted that the ALJ failed to include Beneficiary Numbers 18 and 100 in his decision, but found that the claims were not covered by Medicare respectively because Plaintiff provided no information that beneficiary or caregiver had been trained in the use of the glucometer and supplies (Beneficiary No. 100), and because the information provided did not contain sufficient documentation to substantiate the need for the DME provided at the time of service (Beneficiary No. 18).  R. 10-11, 17-20. Accordingly, the MAC reversed the ALJ's decision with respect to Beneficiary Numbers 73, 74, 87, 33 and 110, and denied the remainder of the claims, affirming the "resultant overpayments," but the MAC does not specifically state the amount of the resultant overpayments.  R. 38.

The MAC's decision is final decision of Secretary and, on November 24, 2010, Plaintiff filed a complaint requesting that the Court reverse and remand the decision pursuant to 42 U.S.C. § 405(g).  Doc. No. 1.

## II.   THE ISSUES.

Plaintiff maintains that the final decision of the Secretary should be reversed and remanded for five reasons.  As set forth above, because the last issue raised by Plaintiff is the only meritorious one, the undersigned has reorganized here the issues raised in Plaintiff's brief to

---

[9] For example, the dates of service for the first beneficiary in the ALJ's spreadsheet are 10/29/2004 through 1/26/2005.  R. 1939.  The date of service for Beneficiary Number 1 on the MAC's list is 1/5/05.  R. 39.

place the last issue first.  Plaintiff asserts that the record contains no evidence supporting the Secretary's calculation of $1,614,691.00 in overpayments based on an extrapolation from the PSC's random sample.  Doc. No. 37 at 32-33 (citing *Dafyik Healthcare Services v. Sebelius*, 2010 WL 4053911 at *3-4 (S.D. Tex. Oct. 14, 2010)).  Plaintiff contends that the total amount of the overpayment, assuming the validity of the Secretary's decision, is $78,000.00 for the 105 beneficiaries whose claims were denied, and $1,614,691.00 represents "every claim ever paid by Medicare to Plaintiff."  Doc. No. 37 at 33.  Thus, Plaintiff argues there is no substantial evidence supporting the amount of the overpayment.

Second, Plaintiff argues that the Secretary's action is arbitrary and capricious because the Secretary disparately treated the claims at issue in this case from prior similar claims submitted by Plaintiff.  Doc. No. 37 at 9-16.  Plaintiff generally maintains that it relies upon the Secretary's lower level decisions for guidance and, if the Secretary has denied a claim, then Plaintiff modifies its practice to comply the Secretary's decision.  Doc. No. 37 at 5.  If the Secretary has approved a claim, then Plaintiff continues to provide the same type of documentation for similar claims.  Doc. No. 37 at 5-6.  Nevertheless, Plaintiff argues that the Secretary continues to deny claims at the initial determination levels regardless of whether the Secretary has approved similar claims in the past.  Doc. No. 37 at 6.  In short, Plaintiff contends that the Secretary has unreasonably targeted Plaintiff for unknown reasons and has ignored its prior lower level decisions affirming coverage for the same type of DME claims with the same type of support provided by Plaintiff in this case.  Doc. No. 37 at 5-6, 13-16.

Third, Plaintiff argues that the Secretary should be estopped from enforcing any overpayments in this case because the Plaintiff reasonable relied on those prior decisions when

submitting these claims. Doc. No. 37 at 16-19.  Alternatively, Plaintiff argues that it should be found without fault in this case due to Plaintiff's reliance upon the decisions in those prior cases. Doc. No. 37 at 18-19. Fourth, Plaintiff generally maintains that it submitted all required supporting documentation to show medical necessity for each claim, and there is no substantial evidence to support the findings of the ALJ and MAC that Plaintiff failed to provide such information. Doc. No. 37 at 20-37.   Fifth, Plaintiff asserts that the ALJ failed to provide any reasons for finding Mr. Schneider's testimony not credible.  Doc. No. 37 at 19-20.  Plaintiff requests that the final decision be reversed and remanded for further proceedings and attorneys' fees.  Doc. No. 37 at 34.[10]

The Secretary maintains that the final decision should be affirmed because it is supported by substantial evidence.  Doc. No. 38 at 1.  The Secretary contends that this is a random sample case and, by use of extrapolation, Plaintiff's overpayments total $1,614,691.00.  Doc. No. 38 at 25 (citing the ALJ's decision (R. 1901) and CIGNA's decision on redetermination (R. 2005)). The Secretary asserts that there is no evidence supporting Plaintiff's contention that $1,614,691.00 represents every claim ever paid to Plaintiff.  Doc. No. 25 at n. 9.  The Secretary states that the projected extrapolation will necessarily have to be reduced as a result of the MAC's decision affirming the claims made for five beneficiaries.

The Secretary does not dispute that this case is one wherein the beneficiaries and claims at issue were chosen by Secretary or its agents through a random sample and, after conducting an audit of those claims, the Secretary or its agents utilized an extrapolation or formula to calculate the total amount of the overpayments. Furthermore, the Commission does not argue that the record contains substantial evidence supporting the random sample and the extrapolation of

---

[10] Plaintiff does not cite any legal basis for its request for attorneys' fees.

$1,614,691.00 in overpayments.  Instead, the Secretary argues that Plaintiff has waived the right to challenge the amount of the overpayment or the validity of the sampling by failing to raise it as an issue during the administrative review process.  Doc. No. 38 at 25-26 (citing *Alacare Home Health Services v. Sullivan*, 891 F.2d 850, 855 n. 5 (11th Cir. 1990) (holding an appellant cannot challenge the validity of a survey for the first time on appeal to the Eleventh Circuit if it was not raised during the administrative appeal); *Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1346-47 (M.D. Fla. 2001) (social security case finding that failure to raise issue before ALJ results in waiver of the issue before the district court)).

As to the other issues raised by Plaintiff, the Secretary maintains that the prior lower-level decisions regarding other claims are not binding on the MAC or the ALJ.  Doc. No. 38 at 18-22.  Furthermore, the Secretary contends that Plaintiff has not meet the requirements articulated in *International Rehab. Sciences, Inc. v. Sebelius*, 737 F.Supp.2d 1281, 1289 (W.D. Wash. 2010) for establishing disparate treatment.  Doc. No. 38 at 20-21.  In short, the Secretary maintains that while Plaintiff makes a conclusory argument that the Secretary's decision in this case is directly contradictory to its prior decisions, Plaintiff has failed to provide sufficiently particular evidence to support its argument.  Doc. No. 38 at 20-21.

The Secretary contends that equitable estoppel does not apply where payment from the Department of the Treasury is sought.  Doc. No. 38 at 22.  Alternatively, the Secretary asserts equitable estoppel requires a showing of affirmative misconduct and "'[n]either the Supreme Court nor the Eleventh Circuit has ever found affirmative misconduct sufficient to support an estoppel claim against the government.'"  Doc. No. 38 at 22 (quoting *U.S. v. Miller*, 2010 WL 2202776 at *4 (S.D. Ala. May 28, 2010)).  The Secretary generally maintains that Plaintiff has

14

failed to establish such affirmative misconduct in this case and, therefore, Plaintiff is not entitled to equitable estoppel.  Doc. No. 38 at 22-23.  The Secretary argues that Plaintiff is not without fault by relying on the decisions reached in the prior lower-level claims because the decisions themselves are not precedential and, as a provider, Plaintiff should have known about the documentation requirements for the DME at issue.  Doc. No. 38 at 23-25.

With citations to the specific documentation requirements and facts in the record, the Secretary argues that substantial evidence supports the decision to deny the 105 claims.  Doc. No. 38 at 4-18.  As to Plaintiff's allegations regarding the ALJ's credibility determination of Mr. Schneider, the Secretary contends that neither the MAC nor the ALJ were required to accept his conclusory testimony.  Doc. No. 38 at 12.  Accordingly, the Secretary requests that the final decision be affirmed.  Doc. No. 38 at 26.

## III.   LEGAL STANDARDS.

### A.      MEDICARE.

Medicare is the federal health insurance program enacted in 1965 as part of the Social Security Act.  *See* 42 U.S.C. §§ 1395-1395ggg. The statutory scheme for the Medicare program has four parts, but this case involves only Medicare Part B, which will pay for DME if those services are "reasonable and necessary for the . . . treatment of illness or injury to improve the function of a malformed body member."  42 U.S.C. § 1395y(a)(1)(A).  In administering Part B, the Centers for Medicare & Medicaid Services ("CMS") enters into contractual agreements with private entities, such as the PSC, Cigna, and the QIC, to perform claims processing and reviews of payments made to service providers.  *See* 42 U.S.C. §§ 1395h, 1395u, 1395u(a)(1)(C).

The district court's power to review final determinations of the Secretary arising under the Act is limited in the same manner as actions arising under the Social Security Act. *See* 42 U.S.C. § 1395ii. [11]  Pursuant to 42 U.S.C. § 1395ii, a beneficiary or other party such as a provider wishing to challenge or seek review of the Secretary's final determination under the Medicare Act must do so pursuant to 42 U.S.C. § 405(g) of the Social Security Act. *See* supra, n. 5; 42 U.S.C. § 405(h); *Heckler v. Ringer*, 466 U.S. 602, 605-07 (1984); *Alabama Hosp. Ass'n v. Califano*, 587 F.2d 762, 765 (5th Cir. 1979); *Wilson v. U.S.*, 405 F.3d 1002, 1006 (D.C. Cir. 2005) ("Judicial review of claims arising under the Medicare Act is pursuant to 42 U.S.C. § 405(g), which is made applicable to the Medicare Act by 42 U.S.C § 1395ii. . . ."); *New York Statewide Senior Action Council v. Leavitt*, 409 F. Supp 325, 327 (S.D. NY 2005).  Once a party has exhausted its administrative remedies and obtained a final decision of the Secretary, a district court has the authority to review the decision and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [the Secretary], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.    STANDARD OF REVIEW.

The Court's standard of review is similar to that of a review for claims under the Social Security.  Therefore, the Secretary's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

---

[11] 42 U.S.C. § 1395ii states: "The provisions of sections 406 . . . of this title . . . shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." (emphasis added.)

relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir. 1991).

Where the Secretary's decision is supported by substantial evidence and used the proper legal standards, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Secretary's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Pruchniewski v. Leavitt*, 2006 WL 2331071 at *6 (M.D. Fla. Aug 10, 2006) (applying standard of review in social security cases to appeal from final decision of MAC). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Secretary]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## IV.   ANALYSIS.

### A.  Substantial Evidence.

Plaintiff maintains that Secretary's final decision is not supported by substantial evidence. Doc. No. 37 at 20-37. More specifically, Plaintiff challenges the Secretary's findings

as to each claim in the random sample and the extrapolation therefrom that resulted in the quantification of $1,614,619.00 in overpayments.  Doc. No. 37 at 32-33.  Random samples and statistical extrapolations of the results therefrom to the universe of claims to calculate overpayments have generally been approved.  *See Chaves County Home Health Service v. Sullivan*, 931 F.2d 914, 916 (D.C. Cir. 1991) (finding that an audit of randomly selected and statistically significant number of sample claims and an extrapolation of the results to the universe of claims permissible to determine overpayments under Medicare); *Michigan Department of Education v. United States Department of Education*, 875 F.2d 1196, 1199-1200, 1205-06 (6th Cir. 1989) (holding that audit of a random sample of and statistical projection of results permissible); *Pruchniewski*, 2006 WL 2331071 at *2, 7-10 (finding audit of random sample and extrapolation to determine overpayments made to Medicare provider permissible and supported by substantial evidence).  Nevertheless, "substantial evidence must exist in the record that supports the total amount of the overpayment that the Secretary claims she is entitled to recover."  *Dafyik Healthcare Services v. Sebelius*, 2010 WL 4053911 at *4 (S.D. Tex. Oct 14, 2010).

In this case, the record does not contain the audit performed by the PSC, its initial determination, the total universe of claims at issue from January 1, 2004 through September 30, 2007, any information about the random sample, or how the results of the audit were used to arrive at a total overpayment in the amount of $1,614,691.00.  R. 1-4457.  The only information in the record regarding the random sample is: Cigna's redetermination decision, wherein it states that the PSC performed an audit of a random sample of "122 beneficiaries/claims" and extrapolated the results to determine the amount of the overpayments; and the ALJ's decision,

18

wherein he states that an audit of a random sample of claims resulted in overpayments of $1,614,619.00.  R. 1901, 2004-05.  In short, the record contains no information which would allow the Court to review the random sample or the amount of the overpayment.  By contrast, in *Pruchniewski*, 2006 WL 2331071 at *2, 7-10 (M.D. Fla. Aug. 10, 2006), the record contained detailed information regarding the sample, the universe of clams, and the extrapolation method used to calculate the overpayment.

Despite the Secretary's contention that the results of the audit were extrapolated to project an overpayment in the amount of $1,614,619.00 (Doc. No. 38 at 25), at the hearing before the ALJ, the legal representative for the QIC stated that this was not a case where an extrapolation or statistical sampling had been conducted. R. 4450.  The number of beneficiaries and claims at issue in this case has also evolved throughout the administrative process.  For example, according Cigna, when PSC performed the audit of the random sample and extrapolated the results to calculate the overpayment, "122 beneficiaries/claims" were at issue. R. 2005.  However, when the MAC issued its decision, which noted that the ALJ missed claims for two beneficiaries, there were 110 beneficiaries and 132 claims.  R. 10-11, 17-20, 39-57.  Moreover, because the record on appeal created by the Secretary has redacted nearly all information which would allow the Court to identify the beneficiaries, as well as the claims at issue, and correlate them with related medical records, and because each agency reviewer at each step in the administrative process created their own unique spreadsheet detailing the beneficiaries, claims, and results of their review, it is nearly impossible for the Court to conduct any meaningful review.  Based on the foregoing, the undersigned **RECOMMENDS** that Court find that the record lacks substantial evidence supporting the amount of the overpayment.

As set forth above, in its brief, the Secretary does not argue that substantial evidence supports the random sample and method used to calculate the overpayment.  Doc. No. 38 at 1-27. Instead, the Secretary relies solely on the argument that Plaintiff has waived the right to raise that argument on appeal because Plaintiff failed to raise the argument below.  Doc. No. 38 at 25. Plaintiff appeared pro se in the administrative process below, and it is **RECOMMENDED** that the Court reject the Secretary's argument for three principal reasons.  First, the Plaintiff placed the amount of the overpayment at issue by stating in his request for hearing by an ALJ that Plaintiff disputed all previous reviews, specifically including the audit.  R. 1959.  *See also* 42 CFR § 405.1032(a) ("The issues before the ALJ include all issues brought out in the initial determination, redetermination, or reconsideration that were not decided entirely in a party's favor.").

Second, at the hearing, the ALJ specifically inquired about the random sample and whether any extrapolation had been made.  R. 4450.  A hearing before an ALJ is non-adversarial, and the ALJ is generally permitted to raise issues during the hearing.  *See Richardson v. Perales*, 402 U.S. 389, 403 (1971); 42 CFR § 405.1032(b).   Third, despite the QIC's representative stating at the hearing that no extrapolation or statistical sample was conducted in this case, the ALJ determined that Plaintiff is liable for overpayments in the amount of $1,614,691.00 (R. 1901, 1938) and, in its request for review by the MAC, Plaintiff requested review of each of the ALJ's findings.  R. 107.  Accordingly, it is **RECOMMENDED** that the Court find that Plaintiff raised the issue of the amount of the overpayment before the Secretary below and the final decision of the Secretary is not supported by substantial evidence as to the amount of the overpayments.  *See Dafyik Healthcare Services*, 2010 WL 4053911 at *4 (S.D. Tex. Oct. 14,

2010) ("substantial evidence must exist in the record that supports the total amount of the overpayments that the Secretary claims she is entitled to recover.").

Due to the level of redaction contained in this record prepared by the Secretary, including the medical records, beneficiary lists, individual claim files, additional medical records submitted by Plaintiff at various stages, the various spreadsheets created by Cigna, the QIC, and the ALJ, and in the index to the record itself, the undersigned finds that it is unable to determine whether substantial evidence supports the Secretary's findings as to the specific beneficiaries and claims at issue. *See generally Reese v. Herbert*, 527 F.3d 1253, 1260 (11th Cir. 2008) ("[J]udges are not like pigs, hunting for [buried] truffles. . . ."). The undersigned has considered whether directing the Secretary to file an unredacted copy of the administrative record under seal would permit the Court to determine whether or not substantial evidence supports the Secretary's final decision. While an unredacted record would certainly benefit the Court's analysis of whether substantial evidence supports the Secretary's decision regarding the specific beneficiaries and claims in the random sample, because the record contains no meaningful information concerning the amount of the overpayment and because the number of beneficiaries and claims at issue has changed since the PSC performed the audit and extrapolated the results to calculate the overpayment, the undersigned finds that an unredacted record would ultimately lead the Court to the same result. *See generally* 42 CFR 405.1032(c) (stating that claims may not be added to a pending appeal before an ALJ unless it has been adjudicated at the lower levels). If, after remand, a new appeal is filed the district court, the parties may move to file the unredacted record under seal. Accordingly, it is also recommended that the Court find that it is unable to

determine whether substantial evidence supports the findings of the Secretary as to the documentary support for the specific beneficiaries and claims at issue.[12]

**B.  Other Issues.**

Relying upon *International Rehab. Sciences, Inc. v. Sebelius*, 737 F.Supp.2d 1281, 1288-89 (W.D. Wash. 2010), Plaintiff argues that the Secretary's action constitutes disparate treatment because this case involves the same type of DME claims with the same type of documentary support which the Secretary has previously approved.  Doc. No. 37 at 5-6, 13-15. In support of its position, Plaintiff has relied on simple, conclusory arguments in its brief and cites only to the general group of prior decisions submitted to the ALJ.  R. 2674-3001; Doc. No. 37 at 5-6, 13-16. Plaintiff did not submit any of the underlying documentation upon which those prior decisions were based.  R. 1-4457.

In *International Rehab. Sciences, Inc*., 737 F.Supp.2d at 1288-89, the Court stated that the "treatment of cases A and B, where the two cases are fundamentally indistinguishable, must be consistent."  *Id*. (internal quotations omitted).  Nevertheless, to prevail on a claim of disparate treatment "a party must bring before the court sufficient particulars of how the [plaintiff] was situation, how the allegedly favored part was situated, and how such similarities as may exist dictate similar treatment and how such dissimilarities as may exist are irrelevant or outweighed."  *Id*. at 1288-89 (internal quotation omitted).  In this case, Plaintiff has failed to make any particularized showing of the similarities between the prior claims and the claims at issue in this

---

[12] In his brief, Plaintiff cites to the medical record for only one specific beneficiary, who is identified as Beneficiary No. 902, in support of Plaintiff's position that substantial evidence does not support the Secretary's findings with respect to the individual beneficiaries and claims.  Doc. No. 37 at 23 (citing R. 1119).  Throughout its brief, Plaintiff makes many arguments based on factual assertions without citation to any supporting record evidence.  *See* generally Doc. No. 37 at 6.  Although it is recommended that the case be remanded for other reasons, Plaintiff is cautioned that all such arguments are summarily rejected.  *See Doe v. Moore*, 410 F.3d 1337, 1349 n. 10 (11th Cir. 2005) (requiring citation to record and authority for all arguments raised).

case, and has failed to identify with particularity how any dissimilarities that may exist are irrelevant or outweighed by other factors.[13]   Thus, Plaintiff fails to meet the standard that it maintains is applicable to its position on appeal.   Moreover, unlike *International Rehab Sciences, Inc.*, which focused on whether a specific type of DME was covered by Medicare, this case involves a question about whether the medical support provided is sufficient to establish medical necessity at the time the serve was provided.[14]

Similarly, with respect to Plaintiff's estoppel argument, Plaintiff relies on *DeWall Enterprises, Inc. v. Thompson*, 206 F.Supp.2d 992, 1001 (D. Neb. 2002), to argue that Plaintiff reasonably relied on the Secretary's prior decisions on the same type of claims with the same type of documentary support.  Doc. No. 37 at 18.   However*, DeWall Enterprises, Inc.*, involved an issue about what billing code should be applied to a single item of DME, not what documentation is required to establish medical necessity.  *Id*. at 995-997.   Therefore, without providing any particularized showing of how the specific prior claims are materially similar to the current claims and that any dissimilarities are irrelevant or outweighed by other factors, it is **RECOMMENDED** that the Court find that the Plaintiff's arguments regarding disparate treatment and estoppel are without merit.

As for Plaintiff's argument that the ALJ failed to provide any reasons for finding Mr. Schneider's testimony not credible, the undersigned finds that it is without merit.  In his decision, the ALJ clearly that Mr. Schneider's testimony was rejected because Plaintiff failed to provide any evidence supporting his statements, and Mr. Schneider failed to establish first-hand

---

[13] In its decision, the MAC also pointed out that Plaintiff failed to provide records of the prior cases which would enable it to compare those claims with the claims at issue here.  R. 18.

[14] The undersigned is not suggesting that Plaintiff can or cannot establish disparate treatment, but is only pointing out that Plaintiff has utterly failed to present the evidence upon which such a decision must be based.

knowledge of the issue upon which he was testifying.  R. 1923, 1929-30.  Accordingly, it is **RECOMMENDED** that the Court find Plaintiff's arguments regarding Mr. Schneider's testimony lack merit.

Plaintiff has requested attorneys' fees and costs, but failed to cite any legal authority tp support its request. Doc. No. 37 at 34.  Accordingly, it is **RECOMMENDED** that the Court provide Plaintiff, after it complies with Local Rule 3.01(g), with fourteen (14) days from the date of judgment to file a motion for attorneys' fees and costs.

## V.    CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that the Court:

1) **REVERSE and REMAND** the final decision to the Secretary for further proceedings pursuant to the sentence four of Section 405(g);

2) Direct the Clerk to enter a separate judgment in favor of the Plaintiff;

3) Provide Plaintiff with fourteen (14) days from the date of judgment to move for attorneys' fees and costs; and

4) Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on August 1, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:
Presiding District Judge


Alan C. Gold, Esq.
1501 Sunset Drive 2nd Floor
Coral Gables, FL 33143

Scott H. Park, Esq.
U.S. Attorney's Office
501 West Church Street, Suite 300
Orlando, Florida          32805

William Schultz, Acting General Counsel
Dana J. Petti, Chief Counsel, Region IV
Howard Lewis, Assistant Regional Counsel
Office of General Counsel, Public Health Division
US Department of Health & Human Services
Suite 5M60, Atlanta Federal Center
61 Forsyth St., SW
Atlanta, GA 30303-8909,